UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MERCANTILE CAPITAL, LP, | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim | ) | |
| Defendant | ) | |
| | ) | |
| v. | ) | CV 01-BU-2785-S |
| | ) | |
| FEDERAL TRANSTEL, INC., | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim | ) | |
| Plaintiff/Third- | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GOINTERNET.NET, INC.; | ) | |
| INTEGRETEL, INC.; NEAL | ) | |
| SAFERSTEIN; JAY M. STARR; | ) | |
| DIMITRI L. KARAPELOU; and | ) | ENTERED |
| KLEHR, HARRISON, HARVEY, | ) | MAR 25 2002 |
| BRANZBURG & ELLERS, LLP, | ) | |
| | ) | |
| Third-Party | ) | |
| Defendants | ) | |

Memorandum Opinion

Now before the Court in the above-styled action is a Fed. R. Civ. P. 12(b)(2) motion filed on December 21, 2001 by Third-Party Defendant Integretel, Inc. ("Integretel"), seeking an order

39

dismissing for lack of personal jurisdiction the third-party claims asserted against it by Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Federal TransTel, Inc. ("FTT"). (Doc. 16). With the jurisdictional discovery authorized by the Court complete, the parties have filed evidence and briefs in support of their respective positions on the motion, which is now ripe for decision. Upon consideration of the record and the arguments of counsel, the Court concludes that Integretel's motion to dismiss FTT's third-party claims against it is due to be **GRANTED**.

I. BACKGROUND

Integretel's President, Ken Dawson, describes Integretel in his declaration as an "end-to-end billing services bureau." Declaration of Ken Dawson, Exhibit A to Memorandum in Support of Defendant Integretel, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 17) (hereinafter "Dawson Decl.") ¶4. Dawson explained at his deposition in somewhat plainer terms that Integretel acts as a "billing intermediary" between its "clients," who are providers of telecommunications products and services, and "end users," the business and residential consumers who have purchased the clients' products or services. See Dawson Deposition (hereinafter "Dawson Depo."), Exhibit A to "Supplement to Federal TransTel, Inc.'s Response to Third Party Defendant Integretel, Inc.'s Motion to Dismiss" (Doc. 32) (hereinafter "FTT's

Supplement"), at 14-16, 54. The record indicates that the process essentially works like this: Each client with whom Integretel has contracted sends data to Integretel at its California place of business, specifying, among other things, what charges the client claims it is owed by end users for services rendered. Integretel processes this data and forwards it to each individual end user's local exchange telephone carrier ("LEC"), which prints a charge for the client's service or product on the end user's telephone bill. Once the end user pays such bill, the LEC remits the appropriate amount to Integretel, which, in turn, deducts the fees and charges to which it is entitled for its services, paying the balance to the client. <u>See</u> Dawson Depo. at 18.

In this litigation, FTT is pursuing claims under a number of legal theories against various parties, asserting that this Court possesses diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). <u>See</u> FTT's Answer, Counterclaim, and Third-Party Complaint (hereinafter "Third-Party Complaint") ¶ 58. However, the only substantive cause of action asserted against Integretel is for the tort of conversion, as set forth in Count Two of FTT's Third-Party Complaint.[1] The salient facts underlying that claim are as

---

[1] FTT's Third-Party Complaint contains five counts. The first four counts allege legal claims for breach of contract (Count One), conversion (Count Two), "Tortious Interference With Contractual Relations and Prospective Business Relationships" (Count Three), and for "Business Libel" (Count Four), respectively. Of these four counts, Integretel is named as a defendant only

follows: FTT is a Georgia corporation "with business activities in Georgia, California and Alabama." Third-Party Complaint ¶ 53. Like Integretel, FTT furnishes billing and collection services for telecommunications provider-clients through end users' LECs. FTT claims that, in March 1999, it entered into a billing services contract with Third-Party Defendant Gointernet.Net, Inc., f/k/a Mercury Marketing Technologies of Delaware, Inc. ("Gointernet"). See Third-Party Complaint, at ¶ 61. Gointernet is a Delaware corporation, with its principal place of business in Pennsylvania, that creates and maintains Internet web sites. See id. & Exhibit A attached thereto; Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction, Accounting and Other Relief of Mercantile Capital, LP (hereinafter "Mercantile Complaint"), at ¶ 4. FTT asserts that Gointernet breached their agreement (hereinafter the "Billing Services Contract") by entering into a separate contract with Integretel and transferring to it billing and collections business associated with telecommunications service contracts between Gointernet and its end users ("end user contracts") that previously had been the source of transactions processed by FTT under the Billing Services Contract. FTT further

---

with respect to Count Two. FTT's Third-Party Complaint also contains a fifth count, which contains the heading, "Specific Performance and Injunctive Relief." That count asks that the Court grant certain equitable relief against all parties, including Integretel, based upon the same alleged wrongdoing underlying the preceding four counts.

claims that it is the "owner and/or assignee" of the end user contracts that gave rise to transactions it had processed under the Billing Services Contract and that it, FTT, has the "immediate right to the billing processing data, revenue, and related rights and obligations" associated with those end user contracts. Third-Party Complaint ¶ 73. Therefore, FTT claims, Integretel has converted such assets through its processing of transactions arising out of Gointernet end user contracts that previously had been handled by FTT, although FTT acknowledges that it believes Integretel did so without knowledge of FTT's rights. Id. ¶ 74-75. As a result, FTT demands judgment "for all profits derived by Integretel with respect to such end user contracts" and for "such net profits as would otherwise have been obtained by FTT from such transactions . . . ." Id. ¶ 75. FTT also asks that the Court impose a constructive trust upon both "such sums as have been paid by, received by or held by Integretel with respect to such end user contracts" and "all electronic data" submitted in connection with such end user contracts processed by Integretel that previously had been the subject of billing by FTT. Id.

Regarding personal jurisdiction, FTT alleges simply that Integretel, as well as the other party defendants, "either transact business in Alabama on a regular basis, or have caused and continue to cause damages in Alabama through the tortious conduct described

[in the pleading.]" Third-Party Complaint ¶ 57. Integretel, however, disputes that allegation as to itself. Integretel asserts, rather, that it does not itself do any business within Alabama and that it has only the most limited of contacts with the forum, which are insufficient, Integretel argues, to allow this Court to exercise personal jurisdiction over it.

The record shows that Integretel is incorporated under the laws of California and maintains its principal place of business in San Jose, California. Dawson Declaration ¶ 4. Integretel does not have, and has never applied for, a license to do business in Alabama, nor does it maintain a registered agent in the state to receive service of process. Id. ¶ 6. Nor does Integretel have any physical presence within Alabama; it has no place of business, employees, mailing address, telephone number, real estate, bank accounts, or any other interest in property located in the state. Id. Integretel has not entered into a contract in Alabama nor has it contracted with any client entity that is either domiciled or has offices in Alabama; nor has Integretel ever filed suit in an Alabama court. Id. ¶¶ 6, 9, 11.

Further, Integretel does not intentionally direct advertisements to any person or entity located within Alabama. Integretel's Discovery Responses, at 8, ¶12. Integretel admits that it maintains a website that may be accessed via the Internet

by persons in Alabama, but that website is passive and is thus for informational purposes only. Id. Dawson also acknowledges that Integretel places advertisements from time to time in a number of trade publications, some of which, Dawson believes, may be national in their circulation. Dawson Depo. at 35-37.

Although Integretel has no contracts with any clients or end users who are Alabama residents, Integretel does provide billing and collection services for its clients relating to telecommunications products and services purchased by end users in Alabama. See Defendant, Integretel, Inc.'s Responses to Federal TransTel's Discovery Regarding Jurisdiction (hereinafter "Integretel's Discovery Responses", Exhibit B to FTT's Supplement, at 2-3, ¶¶ 1 & 3. Thus, Integretel has direct or indirect contractual relationships with LECs providing local telephone service to such Alabama end users, see Dawson Depo. at 16, 44-46, and Integretel receives payments from, and exchanges data concerning Alabama end users with, these LECs. In particular, Integretel has entered into a contract with BellSouth Corporation ("BellSouth"), an LEC that is headquartered in Georgia but which supplies local telephone service in several states, including Alabama. See Dawson Decl. ¶ 7. BellSouth also has offices in Alabama with which Integretel has had "sporadic contact via telephone." Id. However, Integretel's contract with BellSouth was

executed in Georgia and California with BellSouth's Georgia office as signatory, and the contract contains Georgia choice-of-law provisions. Id. Integretel also has contracts with two "billing aggregators," Independent NECA Services, and Illuminet, who, in turn, have contracts with smaller Alabama LECs with whom Integretel has no direct contact. Id. ¶ 8.

Pursuant to its contractual right to collect fees and charges owed by its clients, Integretel retains some portion of the revenues it receives from LECs resulting from billed transactions, including those wherein the end user is located in Alabama. See Dawson Depo. at 16, 19, 24. Also as part of its contracts with clients, Integretel typically incurs obligations to respond to questions and disputes by end users, wherever they might be, concerning charges for client products or services. See Integretel's Discovery Responses at 3, ¶ 4. Further, Integretel remits tax payments to Alabama taxing authorities on behalf of its clients for revenues earned by the clients on Alabama end-user transactions. Id. ¶ 9.[2] However, Integretel has not paid any taxes on its own behalf in Alabama. Id.; see also Dawson Depo. at 43-44.

---

[2] In 2000, Integretel had $247,105,960 in total billings nationwide, upon which it remitted $5,109.00 in taxes to Alabama. As of December 20, 2001, Integretel had $244,802,025 in nationwide billings, upon which it remitted $3,775 in taxes to Alabama. Dawson Decl. ¶ 10.

II.   ANALYSIS

"Federal Rule of Civil Procedure 12(b)(2) 'authorizes a motion to dismiss based upon the traditional defense that the court lacks jurisdiction over the defendant's person, which raises a question as to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant.'" Wiggins v. Equifax, Inc., 853 F. Supp. 500, 501-2 (D.D.C. 1994) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1351 (1969)). "Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)). "The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause . . . [and] represents a restriction on judicial power . . . as a matter of individual liberty." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982).

The plaintiff bears the initial burden of alleging personal jurisdiction by pleading sufficient material facts to establish the basis for exercise of such jurisdiction. Future Technology Today, Inc. v. OSF Healthcare Systems, 218 F.3d 1247, 1249 (11th Cir. 2000) If the plaintiff has done so, the burden shifts to the defendant to

make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present. Id. If the defendant sustains that responsibility, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint. Id. However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits. S & Davis Intern., Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000). And if the parties present conflicting evidence, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing will be sufficient to survive the motion to dismiss notwithstanding the contrary presentation by the moving party. Id.

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Prejean v. Sonatrach, Inc., 652 F.2d 1260 (5th Cir. Unit A 1981)). "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution. Ala. R. Civ. P. 4.2(a)(2)(I); Martin v. Robbins, 628 So. 2d 614, 617 (Ala.

1993); Horn v. Effort Shipping Co., Ltd., 777 F. Supp. 927, 929 (S.D. Ala. 1991)." Ruiz de Molina, supra. The Due Process Clause, in turn, requires that a non-resident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, (1940)). However, the nature and quality of the contacts required by the Due Process Clause vary depending upon whether the type of personal jurisdiction being asserted is specific or general. See Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Id. (citing Madara v. Hall, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984)). It is well established that the requisite minimum contacts will exist to support the exercise of specific jurisdiction "only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id., quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "This 'purposeful availment'

requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, Keeton v. Hustler Magazine, Inc., 465 U.S. [770, 774 (1984)]; World-Wide Volkswagen Corp. v. Woodson, [444 U.S. 286, 299 (1980)], or of the 'unilateral activity of another party or a third person,' Helicopteros Nacionales de Colombia, S.A. v. Hall, [466 U.S. 408, 417 (1984)]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Thus, "the defendant's [own] conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.

"General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." Consolidated Development Corp., supra, 216 F.3d at 1292. In order for a court to possess general jurisdiction, the defendant over which such is asserted must have "continuous and systematic" business contacts with the forum state. Id.; Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1986). See also Helicopteros, 466 U.S. at 416; Perkins v. Benguet Mining Co., 342 U.S. 437 (1952). Thus, the due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction. Consolidated Development Corp., 216 F.3d at 1292.

Integretel first urges that specific jurisdiction cannot possibly exist because it has no contacts with Alabama that might reasonably be deemed "purposeful." Integretel concedes that it has some contacts with Alabama by virtue of its billing and collections activities relating to end users residing there, but Integretel highlights that such contacts result only because third parties, namely its clients, have chosen to sell their telecommunications products and services in Alabama. Even if that may be true in a literal, "but for" sense, the Court concludes that such circumstances do not necessarily imply that Integretel does not have any purposeful contacts with this State.

It is undisputed that, in carrying out its contractual obligations, Integretel knowingly communicates both directly and indirectly with Alabama residents. Integretel does so both by transmitting billing representations to LECs that Integretel fully intends and expects ultimately to be received by Alabama residents for purposes of collecting amounts allegedly due their clients and also by having its employees handle directly questions and complaints by end users relating to billed charges. Similar communications directed to forum residents that relate to attempts to collect debts on behalf of another have been held sufficient to support specific jurisdiction, at least where the plaintiff's cause of action relates directly to the lawfulness of such

communications. See, e.g., <u>Vlasak v. Rapid Collection Systems, Inc.</u>, 962 F. Supp. 1096, 1101-02 (N.D. Ill. 1997) (holding that specific jurisdiction existed over an out-of-state debt collection agency where the agency's phone calls and letters directed to the plaintiff within the forum formed the basis of the plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.); <u>Paradise v. Robinson & Hoover</u>, 883 F.Supp. 521, 525 (D. Nev. 1995) (same); <u>Russey v. Rankin</u>, 837 F.Supp. 1103, 1105 (D.N.M. 1993) (same). That being said, the Court finds such cases plainly to be distinguishable. Unlike in those cases, FTT's relevant claim that Integretel has converted FTT's property to its own use is no way dependent upon whether Integretel ever actually communicated directly or indirectly with Alabama residents, never mind whether Integretel caused a legally cognizable injury to an Alabama resident by virtue of such a communication.[3]

---

[3]The Court notes that FTT now suggests in its brief that "end users in Alabama may have also been damaged or otherwise affected as a result of [Integretel's] conversion of assets and the transfer of data from FTT to Integretel." FTT's Supplement at 5. However, such injuries, in addition to being entirely speculative, are not the subject of any claim in FTT's Third-Party Complaint, and it is unclear, in any event, how FTT might have standing to pursue claims to redress injuries to Alabama end users. See generally <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765, 771 (2000) ("[I]n order to establish Article III standing . . . [a plaintiff] must demonstrate 'injury in fact'--a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155, (1990) (internal quotation marks and citation omitted)); <u>Gladstone, Realtors v. Village of Bellwood</u>, 441 U.S. 91, 99 (1979) ("In order to satisfy Art. III, the plaintiff must show that <u>he personally</u> has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"(emphasis added)).

FTT emphasizes, though, that the very property that is the subject of its conversion claim is the funds and data Integretel has received as a result of its processing certain transactions between Gointernet and their end users, some of whom undisputedly reside in Alabama. See Memorandum of Law in Opposition to Third-Party Defendant Integretel, Inc.'s Motion to Dismiss" (hereinafter "Integretel's Opposition") at 3. FTT thus attempts to paint its conversion claim against Integretel as one seeking the recovery of property that includes its "Alabama data and revenue stream." Id. But the reality of the situation, as the Court views it, is that Integretel's contacts with Alabama are entirely incidental to FTT's conversion claim. FTT's allegations against Integretel boil down to a claim that, by virtue of performing its data processing and billing and collections obligations under its contract with Gointernet, Integretel has wrongfully exercised control over end user data and monies that FTT ostensibly had the right to possess by virtue of the Billing Services Contract. Assuming that such allegations state a viable claim for conversion,[4] they do not

---

[4] Suffice it to say that the Court has some doubts regarding whether FTT's Third Party Complaint even states a claim against Integretel upon which relief can be granted. However, the Court is required first to resolve Integretel's assertion that personal jurisdiction is lacking before it might determine issues relating to a dismissal under Fed. R. Civ. P. 12(b)(6). See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997); Madara v. Hall, 916 F.2d 1510, 1513-14 & n. 1 (11th Cir. 1990).

suggest that Integretel has engaged in tortious conduct that occurred in, or otherwise had any substantial relationship to, Alabama.

To have a conversion claim under Alabama law, there must be a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. Mutual Sav. Life Ins. Co. v. James River Corp. of Virginia, 716 So. 2d 1172, 1179 (Ala. 1998). "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place." United States v. Swiss American Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999). The conversion occurs, in turn, where the unlawful dominion occurs. See Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 619 (5th Cir. 1989); accord Ex parte Ford Motor Credit Co., 597 So. 2d 714, 715 (Ala. Civ. App. 1992) (holding that the while the defendant first took possession of the plaintiff's property in Talladega County, where such possession was lawful, any conversion of the plaintiff's property would have occurred in Jefferson County, where the plaintiff subsequently made a required demand for the return of such property); Jay Pontiac, Inc. v. Whigham, 485 So. 2d 1171, 1174 (Ala. Civ. App. 1986) (finding that where a Georgia defendant hired a wrecker service that took possession of the plaintiff's automobile in Alabama without the plaintiff's consent and towed it

back to Georgia, the conversion took place in Alabama).

FTT's averments suggest no more than that Integretel unlawfully exercised dominion over the end user data and collected funds in question only upon receipt of same by Integretel at its California place of business. Thus, any conversion on the part of Integretel would have occurred solely in California, not Alabama.[5] In other words, the relevant legal issue concerns the potential wrongfulness of Integretel's conduct in California by which it exercised dominion and control over the data and funds it received there. Whether end users associated with the data and who were the original source of the funds may have resided in Alabama and whether there were any communications or other contacts between Integretel and end users in Alabama are both simply immaterial to FTT's conversion claim. Nor can FTT found specific jurisdiction upon its having suffered economic injury within Alabama because it, FTT, happens to do business here; the economic effects from the alleged tortious conduct were not purposefully introduced into Alabama, but were only fortuitous impacts on FTT, wherever it was

---

[5] Even if it somehow might be argued that other defendants connected with Gointernet were the first "converters" of the end user data by failing to submit it to FTT for processing pursuant to the terms of the Billing Services Contract, such would still have no connection with Alabama, as Gointernet's place of business is in Pennsylvania. See Cycles, 889 F.2d at 619. As to the funds received by Integretel, they were sent by the LECs, which are not alleged to have been tortfeasors. Thus, there can be no plausible argument that the conversion of such assets took place before Integretel took possession of them in California.

located. See Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270 (5th Cir. Unit A Aug. 1981). Because any contacts that Integretel has with Alabama do not relate to FTT's conversion claim against it, the Court concludes that the Due Process clause prohibits an exercise of specific personal jurisdiction over Integretel. See Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 721 (1st Cir. 1991); see also Ex Parte Martin, 281 Ala. 135, 199 So. 2d 836 (1967) (holding that due process did not allow for personal jurisdiction over an Illinois publisher who allegedly converted a picture of an Alabama plaintiff (or plaintiff's property right in such a picture) that it published upon receipt from an Alabama "stringer").

FTT also makes an argument that the "continuous and systematic" contacts between Integretel and Alabama "appear" to exist, FTT's Opposition at 5-6, so as to justify an exercise of general personal jurisdiction. In support, FTT points to the following items: (1) Integretel has performed billing and collection activities relating to thousands of transactions between its clients and end users in Alabama; (2) Integretel has remitted tax payments on behalf of its clients to Alabama authorities; (3) Integretel has an informational website that may be accessed via the Internet by Alabama residents; (4) Integretel has placed advertisements in trade publications that have a national

circulation; and (5) Integretel was named a defendant and appeared in a prior lawsuit in Alabama, paying a sum that went towards the settlement. The Court finds, however, that such limited connections with the forum are not the sort of substantial, general systematic business contacts required to sustain the assertion of general personal jurisdiction. See Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292-93 (11th Cir. 2000); Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1986).

### III. CONCLUSION

Based on the foregoing, the Court has determined that it lacks personal jurisdiction over Integretel, under specific and general jurisdictional theories. Accordingly, the Court concludes that Integretel's Rule 12(b)(2) motion to dismiss (Doc. 16) is due to be **GRANTED,** and FTT's third-party claims asserted against Integretel are due to be **DISMISSED** without prejudice. A separate order will be entered.

**IT IS SO ORDERED**, this 25th day of March, 2002.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE